IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| NIKE, INC., an Oregon corporation,<br><br>        Plaintiff,<br><br>v.<br><br>DAVIDE CARDARELLI, an individual,<br><br>        Defendant. | 3:14-CV-01690-BR<br><br>OPINION AND ORDER |

PER A. RAMFJORD
AMY JOSEPH PEDERSEN
LAURA E. ROSENBAUM
Stoel Rives LLP
900 S.W. Fifth Avenue
Suite 2600
Portland, OR 97204
(503) 294-9257

        Attorneys for Plaintiff

ANNE DEVLAN FOSTER
ALLYSON S. KRUEGER
Dunn Carney Allen Higgins & Tongue, LLP
851 S.W. Sixth Avenue
Suite 1500
Portland, OR 97204-1357
(503) 306-5331

        Attorneys for Defendant

1 - OPINION AND ORDER

**BROWN, Judge.**

This matter comes before the Court on Plaintiff's Renewed Motion (#29) for Preliminary Injunctive Relief. For the reasons that follow, the Court **DENIES** Plaintiff's Motion.

## BACKGROUND

On February 17, 2003, Defendant Davide Cardarelli[1] was hired by Plaintiff Nike Incorporated's subsidiary, Nike Italy S.r.l. (Nike Italy). Defendant's employment with Nike Italy was governed by an employment agreement that provided Defendant with eligibility to receive stock options granted by Plaintiff through the Nike 1990 Stock Incentive Plan (the Plan). Plaintiff operates and maintains the Plan under which it may grant stock options to directors, officers, employees, consultants, advisors, and independent contractors.

In 2006 Nike Italy's Human Resources Department offered to "second" Defendant to Nike South Africa to serve as the General Manager. Defendant accepted the offer, and, in accordance with Plaintiff's Global Transfer Policy, Nike Italy remained Defendant's "home location" while Nike South Africa became Defendant's "host location." Defendant's "secondment" became effective in January 2007.

Between July 2004 and July 2013 Plaintiff granted Defendant

---

[1] Plaintiff was a citizen of Italy at all relevant times.

2 - OPINION AND ORDER

ten awards of stock options under the Plan.  Every stock-option grant under the Plan is subject to the terms of the Plan as well as to the terms and conditions of Stock Option Agreements that were distributed to Defendant at the time of each grant date.

Before 2008 all of the Stock Option Agreements that were distributed to and accepted by Defendant contained the following provision setting out the law governing the Stock Option Agreements:  "This Agreement shall be governed by the laws of the state of Oregon."  Decl. of Lori Giardina (#30), Exs. 1-4, ¶ 12.

Beginning in 2008 the Stock Option Agreements distributed to and accepted by Defendant contained the following provision setting out the law governing the Stock Option Agreements:

> The Option grant and the provisions of this Agreement are governed by, and subject to, the laws of the State of Oregon.  For purposes of litigating any dispute that arises under this grant or the Agreement, the parties hereby submit to and consent to the jurisdiction of the State of Oregon, and agree that such litigation shall be conducted in the courts of Washington County, Oregon or the federal courts for the United States for the District of Oregon, where this grant is made and/or to be performed.

Giardina Decl., Ex. 5 at ¶ 13, Exs. 6-10.

On September 16, 2013, Nike Italy delivered a letter to Defendant advising him that he was being terminated with two months notice.  At the time of his termination from Nike Italy, Defendant had a total of 37,060 outstanding Nike stock options from grants made to him between July 2006 and July 2013, 7,500 of

3 - OPINION AND ORDER

which were issued under 2006 and 2007 Stock Option Agreements. Defendant's remaining vested stock options were issued under Stock Option Agreements dated 2008 or later.

On January 10, 2014, Defendant filed a complaint in Bologna, Italy, against Nike Italy.  On February 24, 2014, Defendant filed a second complaint in Italy against Nike Italy.  Ultimately, the Italian court consolidated Defendant's separately filed complaints (the Italian Action) and set the matter before one judge.

In the Italian Action Defendant (as the plaintiff in that action) seeks various damages flowing from his allegedly wrongful termination by Nike Italy.  Specifically, in the Italian Action Defendant seeks (1) "severance indemnity," (2) an annual bonus, (3) equitable compensation for breach of contract, (4) equitable compensation for additional assignments, (5) settlement of accounts with Social Security and Welfare, (6) lost future remuneration, and (7) "the value of the stock options which are part of the determination of the indemnities that are granted as damage for an Italian employee that has been unfairly dismissed." Decl. of Davide Cardarelli (#23) at ¶ 6.  Defendant's claims in the Italian Action are solely against Nike Italy.  Defendant does not bring any claims in the Italian Action against Plaintiff.

On October 23, 2014, Plaintiff filed in this Court a Complaint against Defendant for Declaratory Judgment in which

4 - OPINION AND ORDER

Plaintiff seeks a judicial declaration "to clarify the meaning of the Stock Option Plan and the Stock Option Agreements so that the parties may know and exercise their rights and obligations and to prevent inconsistent rulings in varying jurisdictions regarding the terms of the plan."

On October 31, 2014, Plaintiff filed in this Court a Motion for Injunctive Relief in which Plaintiff "request[ed] that the Court issue an anti-suit or preliminary injunction to prevent [Defendant] from proceeding with the Italian litigation to the extent it involves or addresses claims that arise under or are related to the Stock Option Plan."

On November 25, 2014, this Court heard expedited oral argument on Plaintiff's Motion for Injunctive Relief because Plaintiff asserted exigencies warranted quick consideration of Plaintiff's Motion, concluded Plaintiff had not established at that time that it was entitled to an anti-suit injunction, and denied Plaintiff's Motion with leave to renew.

On December 23, 2014, Plaintiff filed a Renewed Motion for Preliminary Injunctive Relief. The Court heard oral argument on Plaintiff's Renewed Motion on January 16, 2015, and took the matter under advisement.

## STANDARDS

"'A federal district court with jurisdiction over the

5 - OPINION AND ORDER

parties has the power to enjoin them from proceeding with an action in the courts of a foreign country, although the power should be used sparingly. The issue is not one of jurisdiction, but one of comity.'" *E. & J. Gallo Winery v. Andina Licores S.A.*, 446 F.3d 984, 989 (9th Cir. 2006)(quoting *Seattle Totems Hockey Club, Inc. v. Nat'l Hockey League*, 652 F.2d 852, 855 (9th Cir. 1981)).

> Courts derive the ability to enter an anti-suit injunction from their equitable powers. Such injunctions allow the court to restrain a party subject to its jurisdiction from proceeding in a foreign court in circumstances that are unjust . . . . The injunction operates *in personam*: the American court enjoins the claimant, not the foreign court.

*Id.*

> [A] district court, in evaluating a request for an anti-suit injunction, must determine (1) whether or not the parties and the issues are the same, *and* whether or not the first action is dispositive of the action to be enjoined; (2) whether the foreign litigation would frustrate a policy of the forum issuing the injunction; and (3) whether the impact on comity would be tolerable.

*Applied Med. Distrib. Corp. v. Surgical Co. BV*, 587 F.3d 909, 913 (9th Cir. 2009)(quotations omitted; emphasis added). If a party fails to satisfy any one of these standards, the Court should deny an anti-suit injunction request. *Id*. The Ninth Circuit has made clear in the context of an anti-suit injunction that these standards replace the usual preliminary-injunction standards. *See, e.g., Microsoft Corp. v. Motorola, Inc.*, 696 F.3d 872, 883-

6 - OPINION AND ORDER

84 (9th Cir. 2012)("[W]hen a preliminary injunction is also a foreign anti-suit injunction, the likelihood-of-success aspect of the traditional preliminary injunction test is replaced by the *Gallo* test."). Accordingly, although Plaintiff argues in the alternative for a preliminary injunction under the usual standards, an anti-suit injunction matter such as this one must satisfy the standards set out in *Gallo* and *Applied Medical*.

## DISCUSSION

As noted, Plaintiff seeks an anti-suit injunction "to prevent [Defendant] from proceeding with the Italian litigation to the extent it involves or addresses claims that arise under or are related to the Stock Option Plan."

Defendant contends Plaintiff should not be granted an anti-suit injunction because (1) this action is not dispositive of the entire Italian Action; (2) litigation concerning the Stock Option Agreements in Italy will not frustrate an Oregon policy because not all of the stock options were issued pursuant to Stock Option Agreements that contained forum-selection clauses; and (3) granting an anti-suit injunction would intolerably impact comity because litigation of Defendant's employment-termination claims has been proceeding for nearly eleven months in the Italian court.

7 - OPINION AND ORDER

## I. First Prong of the Analysis

Under *Gallo* and *Applied Medical* Plaintiff must first establish the "parties and the issues are the same, and . . . [this action] is dispositive of the [Italian Action]." *See Applied Med.*, 587 F.3d at 913. The issues identified in prong one are threshold issues that must be satisfied before a court may move on to prongs two and three. *Lindows.com,* 319 F. Supp. 2d at 1222.

Defendant asserts Plaintiff cannot satisfy this prong of the analysis because this action is not and cannot be dispositive of the Italian Action, and Defendant notes the Italian Action involves the legality of Defendant's termination by Nike Italy pursuant to Italian law. Plaintiff concedes the legality of Defendant's termination under Italian law is not at issue in the action before this Court.

The Ninth Circuit addressed the first prong of the anti-suit injunction analysis in the context of a forum-selection clause in *Applied Medical*:

> [W]hether the issues are the same and the first action [is] dispositive of the action to be enjoined are interrelated requirements; that is, to the extent the domestic action is capable of disposing of *all* the issues in the foreign action and *all* the issues in the foreign action fall under the forum selection clause, the issues are meaningfully "the same." These interrelated requirements are sensible because the fundamental question the *Gallo* test is designed to address is whether a requested anti-suit injunction should

8 - OPINION AND ORDER

> issue under a contractual forum selection
> agreement.
>
> * * *
>
> Therefore, the crux of the functional inquiry in
> the first step of the analysis is to determine
> whether the issues are the same in the sense that
> *all* the issues in the foreign action fall under
> the forum selection clause and can be resolved in
> the local action.

587 F.3d at 915-16 (emphasis added).  Although the court in *Applied Medical* noted the claims at issue in the foreign and local proceedings do not have to be "precisely and verbally identical," *id*. at 915, this Court notes the claims at issue in the Italian Action are much broader than the claims asserted by Plaintiff in this action.  Thus, resolution of the claims in this matter will not resolve "all of the issues" in the Italian Action as required by *Gallo* and *Applied Medical*.  *See, e.g., Teller v. Dogge*, 2012 WL 4792912, at *10 (D. Nev. 2012)("This case is not dispositive of the action in Belgium.  Plaintiff's success or failure in the instant case will not automatically trigger or guarantee a certain outcome in the Belgian court under Belgian defamation law.").

   Although Plaintiff concedes the stock-option issue would not resolve Defendant's wrongful-termination claim or all of Defendant's damages claims brought in the Italian Action, Plaintiff asserts, notwithstanding *Gallo* and *Applied Medical*, that the fact that this action would resolve one of the legal

9 - OPINION AND ORDER

issues in the Italian Action (the stock-option issue) is sufficient to satisfy the first prong of the analysis. Plaintiff cites a number of cases to support its assertion that "multiple courts have held [ ] a domestic proceeding does not need to dispose of all of the claims in a foreign action to justify issuance of an anti-suit injunction." The cases cited by Plaintiff, however, are either distinguishable or rely on authority that differs from that in the Ninth Circuit.

For example, in *Microsoft Corp. v. Motorola, Inc.*, beginning in November 2010 Microsoft and Motorola engaged in breach-of-contract litigation in the United States District Court for the Western District of Washington related to licensing by Motorola of certain patented technology to Microsoft, among others. 696 F.3d at 875-77. In July 2011 while the breach-of-contract action was ongoing, Motorola filed a patent-infringement action against Microsoft in Germany in which Motorola sought an injunction prohibiting Microsoft from selling products in Germany that allegedly infringed the same patented technology at issue in the United States action. 696 F.3d at 878-79. In May 2012 the German court ruled, among other things, that Microsoft did not have a license to use Motorola's patented technology and issued an injunction prohibiting Microsoft from using Motorola's patented technology. The injunction issued by the German court was not "self enforcing," and Microsoft asked Motorola to agree

10 - OPINION AND ORDER

not to seek enforcement until the Western District of Washington court could rule on the underlying breach-of-contract issues. *Id*. at 880.  Motorola refused, and Microsoft sought a temporary anti-suit injunction in the United States District Court to prevent Motorola from seeking enforcement of the German injunction.  The district court found, among other things, that the United States "contract action . . . would be dispositive of the German patent action," and the court entered a preliminary injunction barring Motorola from "enforcing any injunctive relief it may receive in the German Action with respect to the European Patents therein."  *Id*. at 880.  The Ninth Circuit affirmed the entry of the preliminary injunction and, relying on the analysis of the first prong of the anti-suit injunction requirements, concluded "the district court did not abuse its discretion in determining that Microsoft's contract-based claims . . . would, if decided in favor of Microsoft, determine the propriety of the enforcement by Motorola of the injunctive relief obtained in Germany."  The Ninth Circuit noted:

> As to whether the issues are the same in the sense that all the issues in the German patent action can be resolved in the U.S. contract action, Motorola argues that the U.S. action cannot resolve the German action, because patent law is uniquely territorial and patents have no extraterritorial effect.
>
> To be sure, if the district court had based its injunction in an expectation that U.S. patent claims could dispose of German patent claims, then it would have erred.

11 - OPINION AND ORDER

> But the district court did not base its injunction on the pendency of parallel patent proceedings. Rather, it is Microsoft's Washington state contract claims that the district court determined could resolve the German patent claims.

*Id.* at 883 (citations omitted). Thus, the Ninth Circuit affirmed the district court's entry of a preliminary anti-suit injunction because, unlike here, Microsoft's United States breach-of-contract action was dispositive of all of Motorola's claims in the German action.

Plaintiff also relies on *Medtronic, Inc. v. Catalyst Research Corp*. 518 F. Supp. 946 (D. Minn. 1981), to support its position that Plaintiff satisfies the first prong of the anti-suit injunction analysis because this action can resolve a portion of Defendant's damages claims before the Italian court. *Medtronic*, however, was decided by a district court outside of the Ninth Circuit more than 30 years before the Ninth Circuit's decision in *Gallo*. *Medtronic*, therefore, does not shed any light on how the Ninth Circuit would resolve the issue here.

Finally Plaintiff relies on *Bailey Shipping, Ltd. v. Am. Bureau of Shipping*, No. 12 Civ. 5959, 2013 WL 5312540 (S.D.N.Y. 2013), which is also a case from a district court outside of the Ninth Circuit where the court applied the law of the Second Circuit and concluded the plaintiff satisfied the first prong of the anti-suit injunction analysis even though only some claims in the foreign action would be enjoined. The Ninth Circuit,

12 - OPINION AND ORDER

however, does not apply the same standard as the Second Circuit to the issuance of anti-suit injunctions, and, therefore, *Bailey* is unhelpful.

As noted, in *Gallo, Applied Medical*, and *Motorola*, the Ninth Circuit held in order to satisfy the first prong of the anti-suit injunction analysis, a plaintiff must establish "the first action is dispositive of the action to be enjoined." A close reading of those cases indicates to this Court that in order to satisfy the first prong of the anti-suit injunction analysis in this Circuit, Plaintiff must show this action is capable of resolving the entire Italian Action. As noted, Plaintiff concedes, and the record reflects, this matter is not dispositive of the entire Italian Action.

Accordingly, the Court concludes on this record that Plaintiff has not satisfied the first prong of the anti-suit injunction analysis.

## II.  Second Prong of the Analysis

If a party fails to satisfy any one of the prongs of the anti-suit injunction analysis, this Court should deny an anti-injunction request. *See Applied Med.*, 587 F.3d at 913. Nevertheless, the Court concludes even if Plaintiff satisfied the first prong of the analysis, Plaintiff also fails to satisfy the second prong:  that the foreign litigation would frustrate a policy of the forum issuing the injunction.

Plaintiff asserts the Italian Action frustrates the Ninth Circuit's policy supporting enforcement of forum-selection clauses. For example, in *Applied Medical* the Ninth Circuit stated:

> [T]here is a strong policy favoring robust forum selection clauses [in the United States]. But without the availability of anti-suit injunctions, the vitality of forum selection clauses would be impermissibly and improvidently jeopardized. Although a foreign court might eventually agree that a forum selection clause controls, there is no guarantee that such a resolution would be reached in a timely fashion or at all, and this uncertainty would impair the parties' ability to enforce a forum selection clause. Anti-suit injunctions may be the only viable way to effectuate valid forum selection clauses.

587 F.3d at 918-19 (quotations omitted). Plaintiff notes courts that have confronted situations in which there is a forum-selection clause that would be frustrated absent issuance of an anti-suit injunction have concluded the second anti-suit injunction prong has been met. In the cases cited by Plaintiff, however, there is not any indication that the forum-selection clauses did not govern all of the claims in the domestic actions. Here, in contrast, 7,500 of the vested stock options were issued under the 2006 and 2007 Stock Option Agreements, which did not contain any forum-selection clause. Thus, there is not any frustration of the policy in favor of enforcing forum-selection clauses as to the 2006 and 2007 stock options. *See, e.g., Sanodi-Aventis Deutschland GMBH v. Genentech, Inc.*, 716 F.3d 586,

14 - OPINION AND ORDER

594 (Fed. Cir. 2013)(The court applied Ninth Circuit law and concluded "to the extent that the parties sought relief for the period after the license [containing the forum-selection clause] was terminated, there was no frustration of the policy in favor of enforcing forum selection clauses.").

Plaintiff, nevertheless, asserts the Court should consider the forum-selection clause from the 2008-2013 Stock Option Agreements when addressing the 2006 and 2007 options. Plaintiff relies on a number of cases in which courts have held forum-selection clauses require litigation of "related" non-contract claims in the same forum. None of the cases that Plaintiff relies on, however, involve litigation of issues related to contracts that did not contain any forum-selection clauses.

On this record the Court concludes Plaintiff also has failed to satisfy the second prong of the anti-suit injunction analysis.

### III. Third Prong of the Analysis

"The third step in deciding if an anti-suit injunction is appropriate is determining 'whether the impact on comity would be tolerable.'" *Applied Med.*, 587 F.3d at 919 (quoting *Gallo*, 446 F.3d at 994).

> "[T]he extent to which the United States, or any state, honors the judicial decrees of foreign nations is a matter of choice, governed by the comity of nations" and the "[e]xtension of comity to a foreign judgment is neither a matter of absolute obligation, on the one hand, nor of mere courtesy and good will, upon the other."

15 - OPINION AND ORDER

*Id*. at 920 (quoting *Asvesta v. Petroutsas*, 580 F.3d 1000, 1010-11 (9th Cir. 2009)).

> *Gallo* requires not that [the court] calculate the precise quantum of the injunction's interference with comity, but only that [the court] estimate whether any such interference is so great as to be intolerable.  Such a flexible, fact- and context-specific inquiry accords both with the posture of deference to the district court that abuse-of-discretion review requires generally, and with the resistance of comity in particular to precise measurement.

*Motorola*, 696 F.3d at 886.

In *Gallo* and *Applied Medical* the Ninth Circuit held enjoining a "foreign suit that contravened a forum selection clause 'did not implicate comity at all.'"  *Applied Med.*, 587 F.3d at 920 (quoting *Gallo*, 446 F.3d at 994).  In fact, the Ninth Circuit concluded in those cases that allowing a foreign action to proceed when there is a forum-selection clause that requires litigation of the issue in a different forum "would seriously harm international comity." *Applied Med.*, 587 F.3d at 921 (citing *Gallo*, 446 F.3d at 994).

As noted, however, 7,500 of the stock options at issue in the Italian case and this matter do not contain any forum-selection clause.  As a result, comity is implicated, and the Court, therefore, considers whether the interference is "intolerable."

As the Ninth Circuit noted in *Motorola,* the effect on comity is not something that is specifically calculable:

16 - OPINION AND ORDER

> At one pole, where two parties have made a prior contractual commitment to litigate disputes in a particular forum, upholding that commitment by enjoining litigation in some other forum is unlikely to implicate comity concerns at all. *See Applied Med.*, 587 F.3d at 921. At the other pole, if (hypothetically speaking) the State Department represented to the court that "the issuance of an injunction really would throw a monkey wrench, however small, into the foreign relations of the United States," *Allendale Mut. Ins. Co. v. Bull Data Sys., Inc.,* 10 F.3d 425, 431 (7th Cir. 1993) (Posner, J.), then comity would presumably weigh quite heavily against an anti-suit injunction. Between these two poles, courts must in their discretion evaluate whether and to what extent international comity would be impinged upon by an anti-suit injunction under the particular circumstances.

696 F.3d at 887.

Defendant asserts the Court need not reach the final step in the anti-suit injunction analysis because Plaintiff's Motion fails at prongs one and two. If, however, this Court considers the third prong, Defendant contends the Court must conclude that issuing an anti-suit injunction in this case would have an intolerable impact on comity. As Defendant notes, this case, like *Gallo* and *Applied Medical*, does not involve parties who agreed to litigate all elements of their dispute in this forum. To the contrary, Plaintiff admits Defendant's employment-termination claims are properly litigated in Italy.

Defendant also points out that Nike Italy has defended against Defendant's claims in the Italian Action by engaging Italian counsel, filing pleadings, presenting testimony and

17 - OPINION AND ORDER

evidence, engaging experts, and participating in numerous hearings.  Plaintiff also has participated in a limited capacity in the Italian Action and waited for several months before pursuing an anti-suit injunction in this Court.

On this record the Court concludes comity would be impacted by entry of an anti-suit injunction.  There is not any basis for the Court to lack confidence in the Italian court's ability to apply the correct law to the dispute between Defendant and Nike Italy and to consider Plaintiff's concerns regarding enforcement of the forum-selection clause if an award of damages involving Defendant's stock options becomes an actuality in the Italian Action.  The Court, therefore, concludes Plaintiff has not satisfied the third prong of the anti-suit injunction analysis.

Accordingly, the Court denies Plaintiff's Renewed Motion (#29) for Preliminary Injunctive Relief.


## CONCLUSION

For these reasons, the Court **DENIES** Plaintiff's Renewed Motion (#29) for Preliminary Injunctive Relief.

The Court **DIRECTS** the parties to confer and to submit **no later than March 13, 2015**, a Joint Status Report reflecting a proposed schedule to resolve the remaining issues in this matter.  The Court will schedule a Rule 16 conference with counsel after

18 - OPINION AND ORDER

receiving their Report.

IT IS SO ORDERED.

DATED this 26th day of February, 2015.

/s/ Anna J. Brown

_____
ANNA J. BROWN
United States District Judge

19 - OPINION AND ORDER